May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Darshan Kaur. This is a classic well-founded fear case. In testimony that the Board found credible, Ms. Kaur described how she fled India just two to three months after the Punjab police had raided and ransacked her home, arrested and severely beaten her son, accused her and her son of harboring terrorists and supporting Khalistan, and told the head of her village that she would, quote, not be spared. It's on page 502 of the administrative record. These are the same police that had arrested and brutally beaten her husband, who was jailed in a secret location for four months. The strength of this case, I think, Your Honor, is the well-founded fear claim. I think that, I think the evidence does compel the conclusion. I actually think there's a strong argument and I think there's compelling evidence in this record that she did suffer past persecution. I don't think you need to decide the case on those grounds. With regard to past persecution, I think it's more than you've stated there, Your Honor. After her son and her husband were arrested and tortured, she was chased from her home. Her home was violated and ransacked. The police informed the head of her village that she was harboring terrorists. They threatened that when they catch her, they're not going to spare her. This is something that she interpreted as a death threat. This is clear from page 502 of the administrative record. Ransacked. They searched her home. They tossed her home. Yes. It was not a situation where they went in and stole things, took property, which is what ransacked suggests. This was a situation, come in and they tossed her place looking for stuff. Uh-huh. I'm just trying to get a fair opinion. Yeah. No, that's a fair assessment of what happened on that particular day, but she was visited by the police once a month or once every two months for a period of a year. Looking for the son, for the missing son. At that time, actually, no, Your Honor. They were looking for the husband. For the husband, yes. Which suggests that wherever the husband is, he's now in police custody. We agree with that. I don't dispute that. They keep looking for him. Yeah. I don't dispute that. I mean, she speculated that perhaps if he'd fallen into police hands, the police may have done something with The important fact with regard to the husband is that he was arrested, held for four months in a secret location and brutally beaten to the point where he was really not even able to walk when he returned home. And the same thing happened to the son, not once but twice. But going back to the past persecution claim. Did the husband ever show up again? No, Your Honor. He's still missing. But going back to the past persecution thing, another couple of points here. I mean, on two separate occasions, in order to obtain the release of her son, the police extorted money from her. One thing that I just find to be abominable is that when her husband was being held for four months in a secret location, they refused to divulge to Ms. Cower his whereabouts. That in and of itself, I think, rises to the level of persecution. For four months while this man was in police custody, she had no idea whether her husband was dead or alive. They forced her to sign a blank page telling her that if she ever criticized the police, that page would be used against her. They accused her of hiding weapons, came into her home, accused her of hiding weapons, threatened to arrest her and caused her to faint. I mean, the bottom line is none of these incidents in and of themselves rise to the level of persecution. But when you look at them cumulatively... There were the son's weapons that they said were in her home. That's not clear. They have accused the son of being a terrorist, and they've accused her of harboring terrorists, and they searched the home and suggested that there were weapons in the home. They never arrested her for hiding weapons or for anything at all. All true. Yes. Our view is that if you consider... Not physically harmed. No, not yet. That's why I think perhaps the strength of this claim is the well-founded fear claim. I think that there's a strong, strong argument. There's compelling evidence here that she did suffer past persecution when you view these things cumulatively. But certainly there's no denying that she has a well-founded fear of future persecution. I mean, she fled the country just two or three months after the police came to her home, informed the village Sarpanch that, you know, she was harboring terrorists and was a supporter of Khalistan. At that same time, they had arrested and beaten her son. The government says... He still lives in India. Yes, he is residing in India. We have no idea where he is, however. We have no idea exactly what circumstances he's living under. But he's able to live there, even though he's the one that's suspected of being a terrorist and was beaten, suspected of having the weapons, and the one who police want to try to arrest, according to your client's story. He is nevertheless living in India, and he's able to call her every couple of months. Yes, he's able to call. That doesn't suggest at all, Your Honor, that he's living safely, that he's working, that he has any sort of life whatsoever. All we know from this record is that he's in India. Ms. Kaur testifies or says I'm... Is well enough off to be able to afford phone calls to America. Yes, he may be getting money from family. We don't know. Bottom line is we know nothing, really, except that he calls home once a month or once every two months. Is there any evidence that during this period he's been harmed? There's no evidence either way. She knows nothing. He doesn't tell her anything about his personal situation. He doesn't even tell her where he is, except that we know he's not with relatives. She made that clear on page 171, 172. If in a record there's no evidence of harm, isn't it fair to infer that he is unharmed? Under the circumstances of this case, I'd say no, Your Honor, because what's happening here is this man has intentionally withheld from his mother any information about his circumstances. And because of that, we can't infer one way or the other anything, really, about his circumstances. We know that his mother says that he's in hiding. This is on page 515. He's not with relatives. Other than that, the only thing we know is that he's able to call home once a month or once every other month. Nothing else. The government focuses in trying to defeat the well-founded nature of this claim and the well-founded nature of Ms. Cower's fear, the government focuses on the fact that the Sikh militant movement was crushed by April of 1994. That's their big argument. They don't focus really on the son, although they raise that argument. Their big argument here is that conditions have somehow changed and that now she's safe. Well, obviously, that argument's a nonstarter, because these conditions changed some two years before the police came to her home, arrested and tortured her son, and threatened to arrest her. The militancy was crushed by April of 1994. We know that because the government points out in its brief. The country profile tells us that. This is in paragraph 25 of the profile. But the fact the militancy was crushed in April of 1994 did not prevent the police from arresting and beating her son in June of 1996 or threatening to arrest her in June of 1996. I want to direct the court to paragraph 38 of the country profile that says as follows on this point. Applicants who maintain that terrorist groups are active after late 1993 are generally not credible, although those who allege mistreatment by the authorities may be. The point is a simple one. The fact the militancy was crushed does not mean that the police have stopped harassing individuals who may be supporters of the Khalistan movement, like Ms. Cower. I'll reserve the balance of my time. All right. Thank you. Good morning. May it please the Court, my name is Andrew McLaughlin, and I represent the respondent attorney general of the United States in this case. I actually have very little to say, and I want to encourage the court to ask me any questions that it may have for the government in this case because counsel has simplified this a great deal for us in this argument. I would agree with him that this is fundamentally from the board level a well-founded fear case, and I think he's correct in that assessment. I, however, before this Court, would tell you that this is more properly characterized as a classic substantial evidence case, and the questions of the Court highlighted this. Mrs. Cower may have inferences from what took place to her husband or what took place to her son or the fact that her son doesn't tell her things or the fact that she doesn't know where her husband is. How about death threats to her? Mrs. Cower inferred reasonably or not, or she says that she infers reasonably or not. What do you mean inferred reasonably or not? Well, there's a couple of levels. Took her husband away, beat him up. She's never seen him since. Took her son away and beat him up. They come into the house. I threaten her, basically, that they're going to, you know, they're going to kill her. Compare this case, for example, to the last. Why is that? I mean, sure it's a. If you compare this case to the last two that you heard, for example, in one case where you had actual beatings on account of the person's political beliefs and the case before that where you had real live threats directed at her, directed at the individual. Haven't we said that death threats alone can constitute persecution? This Court has said that, yes, Your Honor, and so has the Board. The question, if you look at the facts of this case, even the overall circumstances, as counsel represents it, and, in fact, that's what the Board is supposed to look at. That's what the Board did look at. Under the circumstances, the threat that we're referring to here is passed on from person to person and eventually reaches Ms. Cower, who infers from what's being told to her second or third or even fourth hand or however many hands that it is a death threat based on how it's passed along to her. The question is, under the overall circumstances, given what's taken place to her and given what's happened to her son and even given what's happened to the rest of her family that's still there, that helped her escape, that sheltered her and hasn't been harmed, is that fear reasonable? And what's more, and this is why I characterize this as a substantial... Tell me why that fear isn't reasonable. Under the circumstances of everything that took place, even if it is subjectively true that she makes that fear, the fact is when they did clap her in irons, when they did go to her house, they didn't harm her. When she was there in India, they didn't come looking for her. The fact that she's inferring from something that she's heard that they might... And if you actually read Counsel's Brief, he says, and in fact she says in her testimony, or as it's translated, that she suspected that they might come looking for her. And she suspected that if they did come looking for her, she suspected they would arrest her, that they might arrest her. And that she suspected that if they did arrest her, that they might torture her or might harm her. All of that is so attenuated based on the circumstances of what took place in her life and all of the surrounding circumstances. What's that attenuated? I mean, I just, you know, her husband disappears, they beat up her son. I mean... Your Honor, let me take one more step back. It sounds very attenuated to me. Let me take one more step back and ask you, do those facts compel a reasonable fact finder to reach the opposite conclusion? You want my answer? Yes. Your Honor, you will have the chance to provide that answer. It is the position of the government that those facts simply don't compel a reasonable fact finder to reach that conclusion. And, in fact, it is also the position of the government that on those facts and on the circumstances that were taking place in India, the fact that the Khalistan movement unraveled, not just the terrorist movement, but also the entire movement was co-opted by the government because the government brought those people into the government. And the government launched the Human Rights Commission out there to evaluate the situation. And as a result of those circumstances that are revealed, even in the country reports in 1997, everything declined. It declined rapidly at first and was continuing to decline at the time of those country reports. The present leader of India is a Sikh, isn't that correct? That is correct, Your Honor. So, we have not only the circumstances that happened to her personally, we also have the circumstances that her son is there and unharmed, and it is only her inference from the fact that he doesn't tell her anything, that he's hiding or something like that, the fact that she doesn't know where her husband is, but he's not in government custody, it simply doesn't add up to the definition of persecution even as applied by this Court in cases like Ghali. Counsel made it clear to you, he was arguing that the most serious thing that had ever happened to her was the fact that the police wouldn't tell her the location of her husband while he was being held for four months. Your Honor, it doesn't add up to persecution and that's what the board found, that's what the immigration judge found. A reasonable fact finder would not be compelled to the opposite conclusion. If the Court has no further questions, I have nothing further to offer. Thank you, Your Honor. All right, rebuttal. It's true, the ultimate question here is the reasonableness of her fear. If your husband were arrested, held secretly for four months, brutally tortured, your son was arrested on two separate occasions, brutally tortured, and then the police came looking for you, would you be afraid? Would your fear be reasonable? Depends on why they were arrested, wouldn't it? Pardon me, Your Honor? Depends on why they were arrested. We know this, Your Honor, we know that when the police... He was a witness, he could come looking for you. We do know that you were already in police custody because they were in your home and they handcuffed you and they didn't do anything. They let you go, they left. Right. But, Your Honor... Judging whether or not you would reasonably fear, would you take into account the fact that the one time that you did come face-to-face with them and they could have arrested you, they didn't. But you're ignoring the context of the last visit. The last visit occurred just hours after Ms. Cower attended a ceremony and was brought on stage. It was a ceremony in which her son was criticizing the police for having arrested and brutalized him. And just hours after that, the police came to her home, they accused her personally of harboring terrorists and supporting Khalistan and they told the head of her village that when they find her, they will not spare her. That's compelling evidence. No reasonable person in their right mind is not going to be afraid at that point given the fact that her husband was brutalized, her son was brutalized, and now the police are saying, we want you and we're not going to spare you. That's compelling evidence. Now, the government says, well, conditions have changed. That's simply not the case. It's true that the militancy has died down, but torture is endemic in India. We know this because the country profile that the government relies on says, and this is on page 45 of the administrative record, the State Department says custodial abuse is ubiquitous in India. It says that the brutality of the Indian law enforcement goes back two centuries. This is not something that's going to change. The most recent documentation in the file is a country report from the year 2000, again, the State Department, and it says torture is common throughout the country. This is on page 263. We have the police looking for Ms. Kaur. They've already tortured her husband, they've already tortured her son, and now they want her, and torture is ubiquitous in India. Is it reasonable to be afraid? Of course. Thank you. Thank you. The matter will stand submitted. And let's see. The remainder of the calendar is also submitted. That's the Reddy, Kumar, and Chihibur cases. All right. That takes care of 12 matters. All right. We'll recess until 9 a.m. tomorrow morning. All rise. This court, for this session, stands adjourned. Thank you.
judges: Pregerson, Kozinski, Hawkins